Good morning. May it please the Court, I'm Scott Bratton on behalf of the petitioner in this case, Yalit Duan. I'd like to reserve two minutes for rebuttal if I could. Just watch the clock as it goes down. Very good. Thank you. The incident case involves two petitions for review. The first one involves the denial of the petitioner's asylum withholding and CAT claims. The basis in that decision for the denial was the adverse credibility determination. And an integral part of that adverse credibility determination was the immigration judge's finding that Ms. Duan failed to provide adequate, reasonably available corroboration, despite the fact that she was never given an opportunity to address why that corroboration was not provided in the case. The second petition involves the denial of a motion to reconsider. And that particular motion was based on a motion to reopen that was filed based on a marriage to a United States citizen. That was denied, and a motion to reconsider was filed, and that's the other petition before the Court. I'd first like to address the adverse credibility determination. I would submit that that determination is not supported by substantial evidence. The I.J. did give some reasons, did he not? The I.J. gave reasons. And as we set forth in the brief, we submit that those reasons were insufficient    For the reason that? Well, I mean, there were a number of different findings regarding inconsistencies. I know. But what is your strongest argument here in oral argument? What's your principal argument? Well, our principal argument is that a large part of the adverse credibility determination relied on the lack of corroboration. A lot of the different things that the I.J. addressed, he said that the petitioner or the asylum applicant failed to provide reasonably available corroboration. And so doing, the court or the DHS never addressed the applicant during the hearing and asked why these documents weren't available. Can you separate the two points for a second? Let's assume that the I.J., just for purposes of discussion, had never said, one of my bases for finding adverse credibility is that you haven't provided corroboration. So put the Wren issue aside for a second. Absent that, was there substantial evidence to support the I.J.'s adverse credibility determination? I believe not. And there's a Tell me why not. That's, I think, the question Judge O'Scanlan asked maybe a little bit differently. Tell me why not. Why not? Because a lot of it was based on improper speculation about how she was able to obtain a passport when she, the, she had problems with the authorities previously. There was an issue cited by both the Board and the I.J. about not believing that she went into hiding. And I do want to address that. On the hiding point, it seems irreconcilable to me. On the one hand, she's in hiding. But on the other hand, she meets with the police every week. Well, when she uses the term hiding, she uses it not in the sense that she's in hiding from everybody in China. She went to live with her uncle. But isn't that a, isn't that something the I.J. who was there had her in front of him at that time? Well, I believe that this Court can review that, because it's a situation where obviously when you're dealing with asylum applicants who don't speak English and using an interpreter, they, some of the things come out a little bit differently. Her, the way she used hiding, she said, I went to live with someone else. I went to report, but I went to live with someone else in the same area and went to report. She was in hiding because the police came to her house. And one of the findings of the judge was that the police actually came to her house after she went in hiding. But she said she went into hiding in June after the police had come to search her  She didn't want any further harassment from the police at her house. Is there any sort of factual issue that is resolved by the trier of fact, the I.J., and we are, we apply a deferential standard? So far as the factual aspects? I mean, there's a deferential standard, but this was based on his finding and speculation that this couldn't possibly be the case when in fact. So is your argument that it's not sufficiently cogent? That is an argument that we've raised. And there's a lot of, there's a number of other things that the I.J. raised that obviously I don't have time to go through in ten minutes today, but we addressed in the brief. Well, I, for example, with respect to the reproductive freedom claim, the I.J. says, doesn't make any specific findings about whether she had a forced abortion or the insertion of an IUD, but does say, I find it implausible that she wouldn't have the IUD removed. Is that an issue on which we give deference to the I.J.? Or can we, the plausibility of whether a woman would have an IUD removed strikes me as not, as something that we can speculate about as well as the I.J. Well, I think that's improper speculation on the part of the integration judge, especially when the applicant states that she didn't because she was told that because it had been in so long, it was, it's a more complicated procedure than just going in and getting it removed. But what do you do on that claim with the I.J.'s finding that because it wasn't in your initial application, I find, I find, I guess he's making, it's not really clear, but I think he's making an adverse credibility finding because she didn't initially make the reproductive freedom claim in her adverse, in her application for removal. Yeah. And with respect to that, she stated that she didn't know, I mean, essentially she didn't know that it was a basis for asylum, and that hasn't always been a basis for asylum. It's reasonable for someone that comes to the United States to. I guess what I'm asking is, I know what she stated. The question is, how do we know whether he believed her? There's no specific finding on that as close as I can tell. He doesn't say, well, I don't believe the I.J. He says, a college-educated person would know this. And therefore, I make an adverse credibility finding. How do we review that kind of finding when an I.J. says, I'm basing this on what I think a college-educated person would know? Well, I think, again, that's improper speculation, and case law states that immigration judges aren't permitted to engage in improper speculation in this      I don't know. I don't know. I don't know. I don't know. So I believe that this Court would have the opportunity to review that. can I ask you a question? I know you want to save some time for rebuttal, but I'd like to ask you a question about your – your reopening claim, which strikes me as a procedural mess. As I understand it, your client filed a motion to reopen based on a marriage. The BIA said no, it's not properly supported and turned it down. Let's assume that decision was correct, that the initial application wasn't properly supported. Explain to me how you get through the procedural issues to get the issue properly in front of us. Well, I think in this particular situation, the motion to reconsider said we didn't realize that this evidence was not sufficient. The Board specifically said you didn't raise a legal or factual error in our prior finding, but went on to state we – basically, we reviewed this and we don't find any. And that's what we believe is incorrect. We believe that she did submit proper evidence the first time. Well, okay, but I've asked you to assume that she didn't. I've asked you to assume that the Board didn't abuse its discretion in saying that the evidence submitted the first time wasn't sufficient to show the bona fides of the marriage. How do you get the issue in front of us procedurally, given – given what happened thereafter? Well, then you deal with the sua sponte aspect of the case, which I would concede this Court has no jurisdiction to review. Our argument was solely based on we believe that the first motion to reconsider. Okay. That's what I'm asking. Yeah. The first motion to reconsider was sufficient in order to establish. The first motion to reopen. Reopen, I'm sorry, was sufficient to establish eligibility under matter of valarde. You may wish to reserve your time, counsel. I do, thank you. Very well. We'll hear from the government. May it please the Court. Manning, Evans, for the government in this matter. Regarding the adverse credibility determination, among the many reasons cited by the immigration judge for this finding was Petitioner's failure to provide a corroborating affidavit from the Petitioner's ex-husband, which leads to the panel's order regarding Rand. And as I count, there's seven separate occasions where the IJ says absence of corroboration. You didn't get affidavits from other demonstrators. You didn't get, you know, it's not just that one instance. That's correct, Your Honor. There are several. But the – I think the failure to provide an affidavit from the husband is the strongest failure to provide corroboration that's supporting the adverse credibility determination, so I'm focusing on that. With respect to Rand, the government believes that the notice and opportunity procedures discussed in Rand are not relevant here for three reasons. Petitioner has not exhausted any claim regarding notice and opportunity procedures before the agency. But how could she have done that if Rand was decided after the agency proceedings ended? Well, the statute has been on the books since 2005, so it's a matter of looking at the statute. I think that that's what the arguments are based on. Well, but here's my difficulty with that. And conceding that Rand may be a unique Ninth Circuit read of the REAL ID Act, and it may or may not, you know, as some prior vacated opinions have suggested, be applicable all the time. But she doesn't know it's coming. It comes afterwards. Why shouldn't we give both her and the agency an opportunity in light of Rand to address the issue? Well, I mean, and it goes to the second issue, too. It strikes me there's a little bit of a catch-22 in your argument. You should have anticipated that the Ninth Circuit was going to decide a case this way and requested when the I.J. said to you – when the I.J.'s decision came down. The I.J. didn't say in the hearing, where's your affidavit? He said in his order. And so what should she have done in order to preserve this argument below, in your view? She should have read the statute and made the argument that it indicated that notice and opportunity should have been offered to her, but that's – Even though the government doesn't read the statute that way. That's correct, Your Honor. I mean, in every case, there's always the first Petitioner to raise an issue. And in this instance, or in Wren, well, it's not clear who was raising the issue in Wren, but generally speaking, issues are presented to courts or to agencies by the people appearing before them. And Ms. Dwan could have made this argument, just as many other Petitioners raise arguments which are sometimes accepted by the courts of the agency. So I think that the statute, the real ID, provided the language that would have allowed her to make the argument, but she didn't. In any event, for the other two reasons, we think Wren is also irrelevant, because it's dicta, and because Wren itself said, and I point the Court to footnote 13, they're talking about a Seventh Circuit case, distinguishing it, and the Wren court itself said, Notice an opportunity to respond applies only in the case of an applicant deemed credible by the I.J. Now, in this case, the immigration judge never thought this Petitioner was credible. And for good reason. There were many reasons, many inconsistencies, many impossibilities that led the I.J. to find her not credible. The I.J. never said something like the I.J. said in Wren, that is, assuming she's credible, I still find she didn't need her burden of proof because she didn't offer corroborating evidence. That's a different kind of finding than what we have here. So Wren really is not relevant. Sotomayor Is that really a different kind of finding? Isn't it a more compelling argument for the Wren position if the I.J. says the reason I find her not credible is because of the absence of corroborating information? This Court has long distinguished between the situation where failure to corroborate goes to an adverse credibility determination versus failure to corroborate not needing your burden of proof. Prior to the Real ID Act, this Court had said that a credible witness need not offer corroborating testimony. But the Court also said in matter of SIDHU that where there's reason to doubt the Petitioner, then the I.J. can ask for corroborating evidence, and failure to provide it gives support for an adverse credibility determination. Scalia. But I, again, have the problem, even if you use the pre-Real ID Act cases, when did the I.J. ask for corroborating evidence? In other words, I'd understand your argument if in the hearing the I.J. said, where's your corroboration? But as I read the transcript, what happened here is the evidence was all put in, and the I.J. then later said in his order, one reason I find you not credible is you didn't put in any corroborating evidence. So where was the notice to Ms. Dwan that she had filed a motion to reopen, saying I'd like a chance to? Well, she could have done that, Your Honor, but the notice that you're referring to appears at page 1092 of the SIDHU decision. That's at 220-530-85. And at page 1092, the Court said, in this case, we'll send the case back because our precedents hadn't provided notice. Are you referring to Wren? No, I'm sorry. I'm actually referring to SIDHU. Oh, SIDHU, SIDHU. At page 1092. And there the Court said, we would not we would reject the idea that the need for corroboration has to be presented to the Petitioner before you can rely on it to support an adverse credibility determination. We would reject that argument except for the fact that our precedents had not clearly recognized that. And that was pre-real ID, was it not? That was, Your Honor. So we're dealing with a different statute at that point? Well, I think the principle applies. In other words, because we're not dealing with the burden of proof-type corroborating evidence issue, and that falls under 1158b1b2, we have a b3 case here where we're looking at adverse credibility. And the reasoning is very similar to SIDHU. In other words, in both instances, you don't have a statute that specifically talks about failure to provide corroborating evidence. B3 just refers to all relevant factors. And so we think that it's reasonable to look at the reasoning in SIDHU, and SIDHU says, you have notice now that you need to provide corroborating evidence if it's well, in SIDHU it's easily available. The standard is now reasonably available. And that notice was sufficient, we believe. I'd also point out, Your Honor, that the standard for review in this Court is compelling evidence that supports a conclusion contrary to the agency's decision. That standard of review is another form of notice that tells an alien that they need to provide every evidence that they have in support of their claim. Roberts, Let me ask you a question about the motion to reopen. It seems to me like a catch-22 situation, and I understand the procedural history is that Ms. Dwan claims she's married to an American citizen. The question is whether it's a bona fide marriage. She files an application to reopen. The agency says, not enough information, we'll turn it down. She then files another – she then files more information, and the agency says, you only get one motion to reopen, and a motion to reconsider must demonstrate that we made a mistake on the first one, and based on what we had at the time of the first one, we didn't make a mistake. Fair summary? Yes, Your Honor. There's something troublesome about that. I mean, isn't it – and I don't know whether the – and I'm not faulting the procedural history, but isn't this the kind of issue where if, in fact, she is married to an American citizen and she can document it and is eligible for change of status based on that, the agency ought to address the issue on its merits rather than simply say, well, you failed to jump through the appropriate procedural hoops? Well, let me say first that the statute and regulations, as well as this Court's precedents, lay out the need to provide clear and convincing evidence of a bona fide marriage in order to change the statute. And I understand – I understand that the first application seems to me to be deficient. And so the Board certainly did not abuse its discretion in denying that motion to reopen. No. I'm asking a sort of a different question, so let me be more explicit. Is this an appropriate issue for mediation if, in fact, we are now two or three years after the fact, we have a bona fide marriage here, whether or not – and we know that from – we know as a court that no matter what the outcome of this case, Ms. Duan is not going to be sent back to China. So the question is, isn't this an appropriate issue for the – for the department to exercise its discretion to engage in mediation? I assume that you do not have a pending request for mediation. That's correct, Your Honor. I'm not aware of any. And this is a case where two motions to reopen were filed before – well. Well, the second one wasn't a motion to reopen because it was untimely. Well, this is not in the record, but there actually was another motion to reopen, I believe to reopen sui sponte. That was denied. No petition for review was filed from that. On no occasion has the Department of Homeland Security agreed to reopening. So that's all I have at this point. Thank you. I'm not aware of any request for prosecutorial discretion in this matter. And that's really all I can say. I would note that this is – this is an alien who came in and filed for asylum almost immediately. So she's been here for a long time simply by the fact that her proceedings have been pending for a long time. And this is a case where I think the agency is going to feel strongly about the adverse credibility determination here. I'd also point out that in the adjustment application itself, and this appears at page 343 of the record, she's indicated that she's not a member of any association, that she'd never been arrested, and that she'd never lied. I'm sorry, it's not at 343. 343 is where she admitted that she had lied on a visa application. Thank you, counsel. Your time has expired, but I have one question. As you're aware, the Wren case is at issue in the pending and bank case of Ashodi. Yes, Your Honor. What would the government's attitude be if we were to defer submission pending Ashodi, in other words, to find out what the status of the Wren issue is? Well, I mean, it's an interesting question, Your Honor, because the government's position in Ashodi is that it's very much like this case, that it's actually not a B-2 case because there was no finding of credibility and then a request for corroboration. But given that, given that your issue is similar, shouldn't we wait to see how that case comes out? The government would not object. We would simply point out that the – whether or not Ashodi is going to speak or how it's going to speak. Well, we understand your point on that, but I am pleased to hear that the government would not object. Thank you very much, counsel. Your time has expired. We will hear back from Mr. Bratton, who has some reserve time. And would you confirm that you have not requested mediation or – I have not requested mediation, but we have requested recently with DHS to agree to a joint motion to reopen, and they said that they would not agree to that. All right. Very well. And that was within the last month that we got the decision on that. Very well. Thank you. So we did do that. With respect to the Wren case, one of the issues that we're raising is that my client was not given the opportunity to explain why certain evidence wasn't in the record. The judge makes a finding that she's not credible in large part based on absence of corroboration, but she was never given an opportunity to explain. So how do we know if it's reasonably available? The immigration judge says it's reasonably available, but how do we know that? And that's one of the issues that the Seidu case did address that and said corroboration has to be reasonably available. How can we get to that point and know that it is unless it's addressed? How do you respond to the government's argument that you should have known of the obligation to bring corroboration, given prior decisions and given the language of the Act? Well, it's hard to tell exactly what corroboration is going to be necessary in each case or what corroboration the judge is going to find would be specific. But if it's not presented, there has to be some questions about why it wasn't presented. It may be the medical records he wanted aren't available, that she tried to get them. We don't know because there's nothing in the record about that. It may be that the people that worked or that were part of her group, or she can't find them, are no longer available. Wouldn't it be her burden to lay that out in front of the I.J.? Well, not if you don't know what the I.J. wants or what the I.J. is going to rely on in his decision. And I think even pre-real IDX cases would support that position. And we would submit that Wren would be applicable to this. And one of the reasons is that the due process concerns at issue in Wren are the same due process concerns that would be at issue here. Very well. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Singleton, O'scannlain, Hurwitz